*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EUGENE PEREZ,

        Plaintiff-Appellee,

v

JOSHUA S. FALEY, D.P.M., and MICHIGAN
FOOT AND ANKLE, P.C.,

        Defendants-Appellants,

and

WILLIAM BEAUMONT HOSPITAL, DANIEL
PETERSON, D.P.M., and JACOB MEISENBURG,
D.P.M.,

        Defendants.

UNPUBLISHED
February 2, 2023

No. 359859
Wayne Circuit Court
LC No. 19-016317-NH

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

CAMERON, J. (*dissenting*).

Plaintiff filed this medical malpractice lawsuit alleging Dr. Faley breached the standard of care by using a Cartiva implant to resolve plaintiff's foot pain. Specifically, plaintiff alleged that the Cartiva implant has an obvious design defect such that no reasonable physician would use it. Plaintiff produced the testimony of one expert, Dr. Goldstein, in support of his design-defect theory. Defendants moved for summary disposition, or in the alternative, a *Daubert* hearing,[1] arguing Dr. Goldstein's opinion was inadmissible speculation under MRE 702. The trial court denied defendants' motion for summary disposition without holding a *Daubert* hearing, concluding defendants' arguments concerned the weight of the evidence, not its admissibility. The majority affirms this conclusion. Because Dr. Goldstein's opinion is inadmissible speculation under MRE 702, I respectfully dissent.

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

The majority concludes "the most relevant reliability concern" in this case is Dr. Goldstein's experience as a podiatrist. In the majority's view, Dr. Goldstein's testimony was sufficiently reliable because, although he has never used the Cartiva implant, he has many years' experience performing podiatric procedures. And, Dr. Goldstein and Dr. Faley had the same training in connection with the Cartiva implant. However, the issues in this case go well beyond Dr. Goldstein's general understanding of anatomy and surgical experience. His opinion is that the implant has such an obvious design defect, that any reasonable physician would refuse to use it. Because Dr. Goldstein's opinion lacks adequate indicia of reliability, it is inadmissible.

Dr. Goldstein made two conclusions relevant to plaintiff's care. First, he concluded that the Cartiva implant was generally unsafe for patients because there was an unreasonable risk that it would become dislodged and move to other areas of the foot. Second, given the existence of plaintiff's gastroc equinus condition, the Cartiva implant was contraindicated. In light of these considerations, Dr. Goldstein opined that Dr. Faley breached the standard of care when he placed the Cartiva implant in plaintiff's foot.

Dr. Goldstein opined that the Cartiva implants are generally not safe. I first note that this is not a products-liability case involving allegations of a defective product. Rather, this is a medical malpractice case and Dr. Goldstein was offered to present testimony on the standard of care, which plaintiff alleges has been breached by use of the Cartiva implant. Because Dr. Faley is a podiatrist, the applicable standard of care is that of the local community or a similar community (as opposed to the national standard that applies to specialists). *Jalaba v Borovoy*, 206 Mich App 17, 21-22; 520 NW2d 349 (1994). Thus, to demonstrate a breach of the standard of care, Dr. Goldstein needed to testify that use of the Cartiva implant was contrary to local standards of care.

Plaintiff provided no such evidence. For example, Dr. Goldstein had no information regarding whether, even in his own hospital, other podiatrists had a different opinion of the implant and were using it. He had no idea whether any other podiatrists or hospitals agreed with his conclusions about the implant. Dr. Goldstein presented no documentation or studies whatsoever from the relevant time period (i.e., 2017) indicating that anyone had raised concerns about the implant. Nor did it appear that Dr. Goldstein had expressed his concerns about the implant to anyone in the medical community, other than to his own residents. But even when it came to his own residents, he told them that they could reach their own conclusions regarding the safety and efficacy of the Cartiva implant and could choose whether to use it in their own practices after completing their residencies. This laissez-faire attitude toward the implant does not establish the local standard of care. Rather, all the evidence suggests that use of the implant was not uncommon in the medical community. Indeed, the implant had received full approval from the United States Food and Drug Administration (FDA), which relied on various studies, including one that showed the implant was as effective as other, more traditional, procedures.

Moreover, MRE 702 requires that expert witness testimony be "based on sufficient facts or data," and is "the product of reliable principles and methods." Dr. Goldstein's testimony satisfies neither of these requirements. Dr. Goldstein's opinion about the Cartiva implant is just that—his own. Thus, Dr. Goldstein's opinion about the standard of care in relation to the use of the implant lacked a reliable basis, and was therefore inadmissible as expert testimony. In my opinion, this is not a close call.

Defendants' motion for summary disposition also challenged Dr. Goldstein's conclusion that, because plaintiff suffered from gastroc equinus, the Cartiva implant was contraindicated, and that Dr. Faley should have used a different, "tried and true" implant if a fusion was not to be performed. Whether plaintiff actually had a gastroc equinus condition in 2017 is another assumption by Dr. Goldstein. Dr. Goldstein did not identify any evidence of this condition in 2017 other than the fact that a different doctor, Dr. Vaupel, had diagnosed it earlier. But it is also true that Dr. Faley did not find this condition, or at least not to any significant degree, a month later. Dr. Goldstein offered no explanation for how he could determine whether Dr. Vaupel or Dr. Faley was correct, other than to speculate that Dr. Faley might have lied in his notes or possibly performed an examination improperly. Even if plaintiff had this condition, Dr. Goldstein's opinion that the Cartiva implant was, therefore, contraindicated is unsupported by anything but Dr. Goldstein's own opinion.

By rendering an opinion without understanding plaintiff's health at the time, Dr. Goldstein's opinion was not supported by sufficient facts or data. As such, Dr. Goldstein's opinion failed to meet the admissibility criteria under MRE 702. Thus, it was error for the trial court to admit Dr. Goldstein's opinion that the Cartiva implant was contraindicated by plaintiff's other conditions.

Dr. Goldstein's testimony that Dr. Faley's actions fell below the requisite standard of care lacked the necessary indicators of reliability. Thus, I would reverse the trial court's order denying defendants' motion for summary disposition. I would further instruct the trial court to enter an order granting defendants' motion.

/s/ Thomas C. Cameron